UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RONETTE R. G.,[1]

              Plaintiff,

   v.

ANDREW SAUL,[2] Commissioner
of Social Security Administration,

            Defendant.

Case No. 8:19-cv-00051-JC

MEMORANDUM OPINION

## I.  SUMMARY

On January 9, 2019, plaintiff Ronette R. G. filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

///

_____

[1]Plaintiff's name is partially redacted to protect her privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Andrew Saul is hereby substituted in as the defendant in this action.

1

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion") (collectively "Motions"). The Court has taken the Motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; January 11, 2019 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On December 19, 2014, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits, alleging disability beginning on April 16, 2006 and October 16, 2013, respectively, due to "[b]ack, arms, legs, body has pins, needles, rods, cannot stand for prolonged time, [and] anxiety." (Administrative Record ("AR") 75, 76, 188, 198, 230). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 30-44).

On December 14, 2017, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 13-24). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: status-post motor vehicle accident with multiple fractures in 2006; bilateral carpal tunnel syndrome; morbid obesity; lumbar and cervical degenerative disc disease; depression; and anxiety (AR 16); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 16-18); (3) plaintiff retained the residual functional capacity to perform sedentary work

///
///
///

(20 C.F.R. §§ 404.1567(a), 416.967(a)) with additional limitations[3] (AR 18-19); (4) plaintiff could not perform any past relevant work (AR 22); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically Document Preparer and Table Worker (AR 23); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of her subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record (AR 19).

On November 15, 2018, the Appeals Council denied plaintiff's application for review. (AR 1-3).

## III. APPLICABLE LEGAL STANDARDS

### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted); 20 C.F.R. §§ 404.1505(a), 416.905. To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

---

[3]The ALJ determined that plaintiff also was able to occasionally and frequently lift and carry ten pounds; stand and walk (with normal breaks) for a total of two hours out of an eight-hour workday and would use a walker for long distances and traveling; sit (with normal breaks) for a total of six hours out of an eight-hour workday; occasionally climb, balance, stoop, kneel or crouch; and frequently perform bilateral gross and fine manipulations. (AR 18-19). The ALJ further determined that plaintiff was precluded from climbing ladders, ropes or scaffolds; crawling; uneven terrain; unprotected heights; dangerous moving machinery; and was limited to simple routine tasks. (AR 19).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity ("RFC") to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

**B.     Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. See Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate ///

4

nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV.   DISCUSSION

### A.   The ALJ's Step Five Determination Is Free of Material Error

Plaintiff contends that the ALJ erred at step five in determining that plaintiff could perform the representative occupations of Document Preparer and Table Worker because the requirements of such occupations are inconsistent with plaintiff's abilities. (Plaintiff's Motion at 2-4). Specifically, plaintiff argues that

she would be unable to perform the Document Preparer job because it requires Reasoning Level Three skills, which is beyond her RFC limiting her to "simple routine tasks." (Plaintiff's Motion at 2-4). Plaintiff argues that she would be unable to perform the Table Worker job because it involves exposure to "dangerous moving machinery," which is forbidden under plaintiff's RFC. (Plaintiff's Motion at 4-5). A reversal or remand is not warranted on these bases.

## 1. Pertinent Law

At step five, the Commissioner must prove that other work exists in "significant numbers" in the national economy which could be done by an individual with the same RFC, age, education, and work experience as the claimant. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c), 416.920(a)(4)(v) & (g), 416.960(c); Heckler v. Campbell, 461 U.S. 458, 461-62 (1983); see Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (describing legal framework for step five) (citations omitted).

One way the Commissioner may satisfy this burden is by obtaining testimony from an impartial vocational expert (alternatively, "VE") about the type of work such a claimant is still able to perform, as well as the availability of related jobs in the national economy. See Gutierrez v. Colvin, 844 F.3d 804, 806-07 (9th Cir. 2016) (citation omitted); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01). When a vocational expert is consulted at step five, the ALJ typically asks the VE at the hearing to identify specific examples of occupations that could be performed by a hypothetical individual with the same characteristics as the claimant. Zavalin, 778 F.3d at 846 (citations omitted); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012) (citations omitted). The VE's responsive testimony may constitute substantial evidence of a claimant's ability to perform such sample occupations so long as the ALJ's hypothetical question included all of the claimant's limitations supported by the ///

record. See Hill, 698 F.3d at 1161-62 (citations omitted); Robbins v. Social Security Administration, 466 F.3d 880, 886 (9th Cir. 2006) (citation omitted).

A VE's testimony generally should be consistent with the Dictionary of Occupational Titles ("DOT").[4] See Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017) ("Presumably, the opinion of the VE would comport with the DOT's guidance."); see generally Gutierrez, 844 F.3d at 807 (DOT "guides the [ALJ's] analysis" at step five). To the extent it is not – i.e., the VE's opinion "conflicts with, or seems to conflict with" the DOT – an ALJ may not rely on the VE's testimony to deny benefits at step five unless and until the ALJ has adequately resolved any such conflict. Gutierrez, 844 F.3d at 807 (citing Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704, at *2 (2000)); Rounds, 807 F.3d at 1003-04 (citations omitted); SSR 00-4p, 2000 WL 1898704, at *4 ("When vocational evidence provided by a VE [ ] is not consistent with information in the DOT, the [ALJ] must resolve [the] conflict before relying on the VE [ ] evidence to support a determination or decision that the individual is or is not disabled."). In each case where VE testimony is used, an ALJ generally must affirmatively (1) ask the VE whether there is a conflict between the expert's opinions and the DOT requirements for a particular occupation; (2) "obtain a reasonable explanation for any apparent conflict"; and (3) explain in the decision how the ALJ resolved any such conflict. Massachi, 486 F.3d at 1152-53 (quoting SSR 00-4p).

---

[4]The DOT, which is compiled by the U.S. Department of Labor, "details the specific requirements for different occupations," and is the Social Security Administration's "'primary source of reliable job information' regarding jobs that exist in the national economy." Gutierrez, 844 F.3d at 807; Zavalin, 778 F.3d at 845-46 (citing Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990)); see also 20 C.F.R. §§ 404.1566(d)(1), 404.1569, 416.966, 416.969. Neither the DOT nor a VE's opinion, however, "automatically 'trumps'" where there is a conflict. Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting Social Security Ruling 00-4p) (internal quotation marks omitted).

An ALJ need only resolve those conflicts that are "apparent or obvious." Gutierrez, 844 F.3d at 807-08. A conflict is "apparent or obvious" only when VE testimony is "at odds with" DOT requirements that are "essential, integral, or expected" for a particular occupation. Id. at 808. The extent to which an ALJ must scrutinize a VE's opinions is highly "fact-dependent." Lamear, 865 F.3d at 1205 (citation omitted). For example, "less scrutiny" is required where the VE has identified a representative occupation that is "familiar" (e.g., "cashiering"). Gutierrez, 844 F.3d at 808. In such cases, an ALJ may be able to resolve a potential conflict without inquiring further of the VE – i.e., based on "common experience" that it is "likely and foreseeable" that a claimant with certain limitations would still be able to perform all of the "essential, integral, [and] expected" requirements the DOT described for the particular occupation. See, e.g., id., at 807-08 (e.g., no "apparent or obvious conflict" between DOT listing for "cashier" occupation which requires "frequent reaching" and VE's testimony that claimant could still work as a cashier despite her inability to reach above shoulder level with her right arm, given how "uncommon it is for most cashiers to have to reach overhead" at all).

Conversely, where a representative occupation is "more obscure," ordinarily an ALJ would not be able to resolve an apparent conflict at step five based solely on "common experience," but instead would need to ask the VE to provide a more detailed explanation for the apparently conflicting opinion. Lamear, 865 F.3d at 1205 (footnote omitted).

## 2. Analysis

### a. Document Preparer

Plaintiff argues that pursuant to Zavalin, a limitation to "simple routine tasks" is inconsistent with Reasoning Level Three work, and thus, she would be unable to perform the Document Preparer job, which requires Level Three reasoning. (Plaintiff's Motion at 4).

8

There are six GED Reasoning Levels that range from Level One (simplest) to Level Six (most complex). DOT (4th ed. 1991), app. C., § III, 1991 WL 688702. Level Three requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." Id. "Courts have found that a limitation to simple tasks performed at a routine or repetitive pace may be consistent with Reasoning Level 2." Skinner v. Berryhill, 2018 WL 1631275, at *4 (C.D. Cal. Apr. 2, 2018) (citation and internal quotation marks omitted). "However, '[a]s one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine.'" Id. (quoting Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. May 25, 2005)). Therefore, "there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." Zavalin, 778 F.3d at 846.

Here, the VE testified that a hypothetical person with plaintiff's RFC, including a limitation to simple routine tasks, could perform the DOT jobs of Document Preparer, DOT 249.587-018, and Table Worker, DOT 739.687-182. (AR 42-43). The VE testified that her testimony in that respect was consistent with the DOT. (AR 44). Relying on the VE's testimony, the ALJ determined that plaintiff could perform these alternative jobs and therefore was not disabled. (AR 23).

Notwithstanding the VE's testimony that no conflict existed, an apparent conflict exists between the ALJ's finding that plaintiff is limited to simple routine tasks and the VE's testimony that a person with plaintiff's RFC could perform the Document Preparer job requiring Level Three reasoning, and the ALJ erred in failing to resolve the apparent conflict through VE testimony. See Zavalin, 778 F.3d at 846-47; see also Lamear, 856 F.3d at 1207 n.3 ("The ALJ is not absolved of this duty to reconcile conflicts merely because the VE responds yes when asked

9

if her testimony is consistent with the DOT.") (citation and internal quotation marks and brackets omitted).

Defendant argues that any error was harmless. (Defendant's Motion at 2-3). He points out that the claimant in <u>Zavalin</u>, where the error was found not harmless, had cerebral palsy, a learning disorder, a speech impediment that caused him to speak haltingly, was deemed disabled from the age of 13, had no work history, and had finished high school with a modified diploma with the help of special education classes, which allowed him to work at his own pace. (Defendant's Motion at 2 (citing <u>Zavalin</u>, 778 F.3d at 843-44, 847)). Defendant further argues that the ALJ here limited plaintiff to simple routine tasks to address her depressive symptoms, but noted that depression did not prevent plaintiff from being able to "read, handle her finances, drive, and follow instructions, which are activities that require the ability to sustain concentration and attention." (AR18 (citation omitted), 244-47). Plaintiff is silent on the issue of harmless error. The Court need not resolve whether the ALJ's failure to resolve the apparent conflict is harmless because the ALJ determined plaintiff could perform another job – Table Worker – identified by the VE, as discussed below. <u>See</u> <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114-15 (9th Cir. 1999) (indicating that the court need not address a claimant's arguments regarding one of two jobs identified by the ALJ given that one of the jobs satisfied Step Five).

### b.    Table Worker

Plaintiff contends that the ALJ failed to resolve an apparent conflict between her RFC prohibiting her from working around "dangerous moving machinery" and the Table Worker job, which requires work along a conveyor belt.[5] (Plaintiff's Motion at 4-5). Specifically, plaintiff argues that the Table

---

[5]The Table Worker job requires Reasoning Level One, and plaintiff does not assert any conflict regarding the reasoning level for this job. Nor does plaintiff contend that the Table

(continued...)

Worker job "involves constant exposure to a conveyor belt" and "the job description indicates that the worker has to extend herself over the conveyor belt to replace linoleum tiles, which makes the job even more dangerous." (Plaintiff's Motion at 4).

As plaintiff notes, the job description for Table Worker reads as follows: "Examines squares (tiles) of felt-based linoleum material passing along on conveyor and replaces missing and substandard tiles." DOT 739.687-182, 1991 WL 680217. Plaintiff's contention that the Table Worker job involves working around dangerous moving machinery is entirely speculative and belied by the DOT job description. The DOT describes the Table Worker job as requiring a low degree of finger and manual dexterity and involving no moving mechanical parts, no electric shock, no high exposed places, no radiation, no explosives, and no toxic caustic chemicals. Id. Such description does not indicate that the Table Worker job involves working around dangerous moving machinery. Thus, the VE's testimony did not present an actual or apparent conflict with the DOT, and the ALJ properly relied on the VE's testimony in making his step five determination that plaintiff could perform the Table Worker job. See Garcia v. Berryhill, 2017 WL 931875, at *4 (E.D. Cal. March 9, 2017) (finding no conflict with DOT where RFC precluded exposure to dangerous machinery because identified Table Worker job did not involve any exposure to hazardous working conditions); Cunningham v. Astrue, 2010 WL 4916629, at *4 (C.D. Cal. Dec. 1, 2010) (finding no conflict with DOT where RFC precluded exposure to dangerous working machinery because identified Table Worker job did not involve dangerous moving machinery).

Accordingly, a remand or reversal on this ground is not warranted.

---

[5](...continued)
Worker job does not exist in significant numbers in the national economy. At 72,000 jobs nationally, the job exists in significant numbers. See Gutierrez v. Colvin, 740 F.3d 519, 527-29 (9th Cir. 2014) (holding that 25,000 jobs nationally is a significant number).

11

**B.      Remand Is Not Warranted for Evaluation of Headache Severity**

Plaintiff contends that the ALJ erroneously found that plaintiff's chronic headaches were not a severe medically determinable impairment at step two. (Plaintiff's Motion at 5-7).  Specifically, plaintiff argues that the ALJ "ignored almost all of the evidence regarding her headaches," including "multiple emergency room visits, different medications, and specialized treatment with a neurologist."  (Plaintiff's Motion at 6-7).  A reversal or remand is not warranted on the asserted basis.

**1.      Pertinent Law**

Step two of the sequential evaluation process functions as "a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).  To proceed beyond step two, a claimant essentially must present evidence that she has a medically determinable physical or mental impairment which is severe, and which has lasted (or can be expected to last) for a continuous period of twelve months or more.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii); see Bowen v. Yuckert, 482 U.S. 137, 148 (1987); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing SSR 96-3p); Averbach v. Astrue, 731 F. Supp. 2d 977, 981 (C.D. Cal. 2010) (citations omitted). An impairment should be deemed "non severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities.  Bowen, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "de minimis" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb, 433 F.3d at 686 (9th Cir. 2005) (citations omitted); see also 20 C.F.R. §§ 404.1521; 416.921.  When reviewing an ALJ's findings at step two, the district court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433

F.3d at 687 (citing <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

## 2. Analysis

The majority of the evidence in the record regarding plaintiff's headaches consists of plaintiff's testimony and her subjective complaints.[6] At the hearing, plaintiff testified that when she used to get headaches, they lasted "[l]ike five days" and they "really wipe[d] [her] out and they hurt a lot." (AR 35). She further testified that in the last month-and-a-half before the hearing, her headaches had been mild because she was seeing "a really good physical therapist and they [had] been working out [her] head and so that's been really helpful." (AR 35). The record also contains treatment notes of plaintiff's subjective complaints about her headaches, which, alone, cannot show the existence of a medically determinable impairment.[7] (AR 996, 1002, 1096, 1545-52, 1931, 1961, 2056, 2070, 2157, 2201, 2227); <u>see</u> <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding portions of treatment records based solely on claimant's own "perception or description" of his problems did not support a finding of a medically determinable impairment).

The limited objective evidence in the record regarding plaintiff's headaches either did not support a finding of a medically determinable impairment or was inconclusive. A March 2015 CT of plaintiff's head indicated no acute intracranial abnormalities. (AR 1552). When plaintiff saw a neurologist for increased headaches in July 2015, an examination revealed no change from the prior visit, an

[6]Plaintiff did not mention limitations from headaches in her disability reports or her function report. (AR 230, 241-48, 263-82).

[7]The ALJ discounted plaintiff's credibility, a finding that plaintiff does not challenge.

13

MRI of the brain was ordered, and plaintiff was prescribed Fiorecet as needed. (AR 996). Plaintiff was assessed with tension headaches, but no diagnosis was made. (AR 996). A February 2016 MRI of plaintiff's brain indicated very mild cerebral atrophy and ex-vacno dilatation of the ventricular system, and well-defined T2-hyperintense focus within the subcortical white matter of the right superior frontal gyrus, which could be seen in "normal patients" and those with migraine headaches and mild chronic small vessel ischemic disease. (AR 2164). A September 2016 CT of plaintiff's brain indicated no acute intracranial hemorrhage or mass effect. (AR 2071). A December 2016 CT of plaintiff's brain indicated no evidence of intracranial hemorrhage or mass effect, and after a negative work up at the emergency room for headache, plaintiff was sent home. (AR 2005, 2064, 2213). The treating source opinion contained no finding of impairment due to headaches, and neither did any other medical opinion in the record. (AR 45-91, 77-106, 1066-68, 1103-08). Based on the record as a whole, the ALJ reasonably concluded that plaintiff's headaches did not have more than a minimal effect on her ability to work at step two. See Ukolov, 420 F.3d at 1006 (concluding no error at step two where medical opinions were not accompanied by a finding of impairment); Diep Trac v. Colvin, 2013 WL 1498908, *6 (C.D. Cal. Apr. 9, 2013) (finding no error in ALJ's finding of a non-severe mental impairment at step two where the record contained no evidence that claimant had any specific functional limitations due to depression that impacted her ability to work).

To the extent plaintiff argues that the ALJ should have more fully discussed the evidence regarding plaintiff's headaches, the argument is unavailing.[8] Plaintiff

---

[8]The ALJ noted that physical therapy treatment was suspended when plaintiff presented with complaints of headaches. (AR 20, 1006, 2166). The ALJ also noted that the treating source opined that plaintiff could not complete a full workday due to cervical and lumbar degeneration.

(continued...)

had the burden of proving that her headaches affected her ability to perform basic work activities, and substantial evidence supports the ALJ's conclusion that plaintiff did not meet that burden. See Hurter v. Astrue, 465 Fed. Appx. 648, 649-50 (9th Cir. 2012) (finding no error where ALJ failed to explicitly consider certain alleged impairments where the medical evidence provided inconclusive support that the alleged impairments affected her ability to perform basic work activities).

Accordingly, a remand or reversal on this ground is not warranted.

## C. The ALJ Did Not Err in Finding That Plaintiff's Physical Impairments Do Not Meet Listing 1.03

Plaintiff contends that the ALJ erred in finding that plaintiff's multiple lower extremity fractures do not meet Listing 1.03. A reversal or remand is not warranted on this basis.

### 1. Pertinent Law

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition outlined in a listing. See 20 C.F.R. §§ 404.1520(d), 416.920(d). An impairment matches a listing if it meets all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990), superseded by statute on other grounds as stated in Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013); Tackett, 180 F.3d at 1098. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. Sullivan, 493 U.S. at 530; Tackett, 180 F.3d at 1099. An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the

///

///

<hr />

[8](...continued)
(AR 21, 1066-68). The ALJ did not include plaintiff's headaches in his findings of severe impairments at step two. (AR 16).

15

criteria for the one most similar listed impairment are present.[9]  <u>Sullivan</u>, 493 U.S. at 531; <u>see</u> 20 C.F.R. §§ 404.1526(b), 416.926(b).

Although a claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing.  <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990) ("[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments.").  Remand is appropriate where an ALJ fails adequately to consider a listing that

---

[9]Under Social Security regulations, medical equivalence can be found in three ways:

(1) If you have an impairment that is described in [the Listing of Impairments] . . . but [¶] . . . [y]ou do not exhibit one or more of the findings specified in the particular listing, or [¶] . . . [y]ou exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing, [¶] . . . [w]e will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

(2) If you have an impairment(s) that is not described in [the Listing of Impairments] . . . , we will compare your findings with those for closely analogous listed impairments.  If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

(3) If you have a combination of impairments, no one of which meets a listing . . . , we will compare your findings with those for closely analogous listed impairments.  If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. §§ 404.1526(b), 416.926(b).

16

plausibly applies to a plaintiff's case.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (plaintiff must present plausible theory as to how an impairment or combination of impairments equals a listed impairment).

In order to be considered disabled under Listing 1.03, a claimant must show that she has had reconstructive surgery or surgical arthrodesis of a major weight-bearing joint which results in the claimant's "inability to ambulate effectively" and claimant's return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.03.

Listing 1.00(B)(2)(b) defines "inability to ambulate effectively" as follows:

(1) Definition.  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.  (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to

walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(b).

### 2.     Analysis

Plaintiff argues that the ALJ's decision is flawed based on the following: (1) the ALJ failed to describe with any specificity the evidence he relied on in finding that plaintiff was able to ambulate effectively and that "there was good union of her lower extremity fractures;" (2) the ALJ "ignore[d]" evidence of "inability to ambulate effectively," as shown by the RFC limiting plaintiff to no walking on "uneven terrain" and her use of a disabled-persons bus to pick her up in front of her condominium; and (3) the listing does not require evidence of non-union, but nonetheless, imaging of plaintiff's right hip, pelvis, and left ankle has shown positive findings. (Plaintiff's Motion at 7-10). The Court disagrees.

At step three, the ALJ discussed whether plaintiff's physical and mental impairments met or medically equaled listings 1.03, 1.04, 11.14, 12.04 and 12.06. (AR 16-18). In finding that plaintiff's lower extremity fracture-related impairments did not meet or equal Listing 1.03, the ALJ stated that although plaintiff had surgery on her lower extremities following the motor vehicle accident in 2006, she "was able to ambulate effectively within 12-month[s] and there was good union of her lower extremity fractures." (AR 17). The ALJ noted that after plaintiff's surgery in 2006, she worked continuously from 2008-2013. (AR 20, 204-05, 217). Despite being assessed with lumbosacral radiculitis, plaintiff

presented with generally normal musculoskeletal examinations of her back and lower extremities in terms of motor strength, sensation, and negative straight-leg raising tests, with the general exception of tenderness of her muscles and lumbar spine, and no indication of muscle atrophy. (AR 20-22, 788, 1010, 1016, 1035, 1932, 1934, 2025, 2028). In April 2015, a consultative examiner opined that plaintiff could stand and walk six hours per eight hour work day, despite examination findings of limited range of motion of the lower back, slightly antalgic gait, and limited range of motion of the left ankle and right hip.[10] (AR 21, 1107). The ALJ also noted that although he allowed for a walker for extended ambulation, the record did not show that plaintiff required a walker or presented using it on all occasions. (AR 22, 1103). The Court finds that the ALJ described with sufficient specificity the evidence he relied on in making the determination that plaintiff's impairments did not meet Listing 1.03.[11]

Contrary to plaintiff's argument, the ALJ did not ignore evidence of "inability to ambulate effectively." (AR 19). An RFC precluding plaintiff from full-time work involving "uneven terrain" does not establish an inability to ambulate effectively for purposes of Listing 1.03. See Fernandez v. Berryhill, 2018 WL 3322879, at *7 (C.D. Cal. July 5, 2018) ("While the ALJ precluded [claimant] from jobs that require 'walking on uneven terrain,' that is not tantamount to an 'inability to walk a block at a reasonable pace on rough or uneven surfaces' so as to qualify [claimant] for Listing 1.03.") (internal citation

---

[10]Two State Agency medical consultants also opined that plaintiff could stand and walk six hours per eight hour work day, despite her impairments. (AR 55, 70, 87, 102). The ALJ considered, but gave less weight to the opinions that plaintiff had the capacity for light work, finding that the evidence showed that plaintiff could only perform a range of sedentary work. (AR 21).

[11]Additionally, the ALJ found that plaintiff's subjective symptom allegations were inconsistent with the objective medical evidence and not credible, which, again, plaintiff does not challenge.

omitted); see also Moreno v. Astrue, 444 Fed. Appx. 163, 164 (9th Cir. 2011) (concluding that ALJ's RFC determination that limited claimant to walking on even terrain did not establish inability to ambulate effectively under the listings). Nor would it make sense that plaintiff's use of disabled transportation would equate to an "inability to use standard public transportation" for purposes of Listing 1.03 when plaintiff also travels by walking, driving a car, or riding in a car. (AR 40, 244).

Finally, plaintiff fails to show that "positive findings" in imaging of her right hip, pelvis, and left ankle establish that she meets or equals Listing 1.03. For example, plaintiff complained of right hip pain in January 2013, but denied back pain, deformity, gait abnormality, joint stiffness, joint swelling, joint warmth and knee pain; plaintiff's pelvis showed healed fractures with hip joint spaces preserved in April 2015; and plaintiff presented with an Achilles tendon strain of her left lower extremity in Fall 2015, but by February 2016, her lower extremity examination was normal. (AR 812, 1109, 1912, 2028, 2030-37). Plaintiff's own testimony that she can ambulate without her walker except "to go long distance and/or take public transportation or go somewhere that [she] won't be able to loosen," demonstrates that plaintiff does not have the type of extreme limitation in the ability to ambulate that is required in Listing 1.03. (AR 36).

Considering the record as a whole, plaintiff has not met her burden of demonstrating that her impairments met or equaled the criteria of Listing 1.03. See Bowen, 482 U.S. at 145-52 (placing burden on claimant to produce evidence that his impairment meets a listing). The ALJ's step three finding that plaintiff's impairments do not meet or equal Listing 1.03 is supported by substantial evidence.

Accordingly, a remand or reversal on this ground is not warranted.

///

///

20

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   August 15, 2019

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE